IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

UNITED STATES OF AMERICA,

Plaintiff,

v.

GEORGE LINDELL,

Defendant.

Case No. 13-cr-00512-DKW-1

**ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR AN AMENDED PRELIMINARY ORDER OF FORFEITURE AND A PARTIAL FINAL ORDER OF FORFEITURE**

The government moves for both a partial final order of forfeiture as to $27,000 in Defendant George Lindell's Individual Retirement Account (IRA) and an amended preliminary order of forfeiture with respect to the remaining value of the same IRA as substitute property subject to forfeiture ("motion"). For the reasons more fully set forth below, because the government has shown that the statutory requirements for both of the above forms of relief have been met, the motion is GRANTED.

## LEGAL STANDARDS

### 1. Final Order of Forfeiture

Pursuant to Section 853(n) of Title 21, the United States shall have clear title to property subject to a final order of forfeiture following the expiration of the time for any person asserting a legal interest in the property to petition the court for a

hearing on his/her alleged interest. 21 U.S.C. § 853(n)(7) (cross referencing §853(n)(2)). Such person has thirty days from the final publication of notice of a preliminary order of forfeiture or receipt of written notice, whichever is earlier, to petition a court. *Id.* § 853(n)(2) (cross-referencing § 853(n)(1)). Any person so petitioning the court must show by a preponderance of the evidence either that (A) the interest was "vested" in the petitioner rather than the defendant or the petitioner's interest was superior to that of the defendant, or (B) petitioner is a bona fide purchaser for value of the interest without cause to believe the interest was subject to forfeiture. *Id.* § 853(n)(6).

**2. Substitute Forfeitable Property**

A court must order the forfeiture of substitute property of a defendant when, as a result of any act or omission of the defendant, property subject to forfeiture:[1]

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

[1]Property is subject to forfeiture when, among other things, it constitutes or is derived from proceeds of certain offenses. 18 U.S.C. § 982(a)(2)(A).

21 U.S.C. § 853(p)(1) & (2).

## DISCUSSION

### 1. Final Order of Forfeiture

On May 27, 2015, a jury determined that $27,000 in Defendant Lindell's IRA was property subject to forfeiture because it constituted or derived from proceeds traceable to certain statutory violations. Dkt. No. 204. On September 13, 2016, the Court entered a preliminary order of forfeiture with respect to the above-mentioned $27,000. Dkt. No. 347. At the same time, the Court found that the total amount Lindell was required to forfeit was $8,626,588.86, as to certain counts of convictions, concurrently with $255,000, as to other counts of conviction.[2] *Id*. at 8.

The government now seeks a final order of forfeiture with respect to the $27,000 in Lindell's IRA found to be forfeitable by the jury. Dkt. No. 407. The government asserts that it published notice of the preliminary order of forfeiture for at least 30 consecutive days, and no timely claim has been filed. Dkt. No. 407-1 at 2-3.[3] Although not originally provided when the motion was filed, the

---

[2]Lindell's co-defendant was also required to forfeit the $8,626,588.86 in U.S. currency, but not the $255,000, because their counts of conviction did not completely overlap. Dkt. No. 347 at 8.

[3]The government also asserts that it provided direct notice to any person known to have alleged an interest in the $27,000. Dkt. No. 407-1 at 2-3. In its reply, though, the government asserts that "it does not appear that direct notice was sent to any possible claimant." Dkt. No. 428 at 2. The Court discusses the lack of such direct notice below.

government submitted in reply a Declaration of Internet Publication and Advertisement Certification Report, indicating that notice of the preliminary order of forfeiture was made on an official government internet website starting October 7, 2016 and running on consecutive days until November 5, 2016. Dkt. No. 428-2 at 3-5.

In opposition, Lindell argues that a final order of forfeiture should not entered because a third party, namely, his wife, "could" assert an interest in the $27,000 found forfeitable by the jury and the government failed to provide her with direct notice of the preliminary order of forfeiture. Dkt. No. 427 at 4.

While the government does not dispute that it failed to provide direct notice to Lindell's wife (or any third party for that matter), the record is clear that Lindell's wife received *actual* notice of the government's efforts to forfeit the $27,000 found forfeitable by the jury. Notably, in an affidavit dated July 7, 2020, Lindell's wife stated that she never received written notice of the preliminary order of forfeiture. Dkt. No. 427-1 at ¶ 6. In other words, at the latest, since July 7, 2020 Lindell's wife has had actual notice of this forfeiture action. Because that date is more than 30 days ago, Lindell's wife cannot now attempt to seek relief from forfeiture of the $27,000 found forfeitable by the jury. *See* Supp. R. for Admiralty or Maritime Claims & Asset Forfeiture Actions 4(b)(v) ("A potential

claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice."); 21 U.S.C. 853(n)(2) (providing that a person asserting an interest in property to be forfeited must petition a court within thirty days of notice).

In addition, Lindell provides no indication of the nature of the interest his wife may have in the IRA. Among other problems, therefore, no showing has been made that his wife's purported interest in the IRA was "vested" in his wife rather than himself or that his wife's purported interest was superior to his own.[4] In addition, no showing has been made that Lindell's wife was a bona fide purchaser of any purported interest in the IRA. Therefore, even if Lindell's wife had an interest in the IRA sufficient to give her standing in this proceeding, something which the government disputes (*see* Dkt. No. 428 at 3-6), Lindell has failed to show that his wife would prevail in any petition she could file under Section 853(n).[5] As a result, because the government has now shown that notice

---

[4]The government generously surmises that Lindell's wife's interest in the IRA may be as a beneficiary. *See* Dkt. No. 428 at 3-4. Even if this was true, as the government explains, it would not help Lindell's wife, given that it is undisputed that Lindell was (prior to the preliminary order of forfeiture) the holder of the IRA. *See id.* at 7.

[5]The Court notes that, while, arguably, Lindell's wife may have standing to assert an interest in the IRA, *Lindell* certainly does not have standing to assert *his wife's* purported interest for her. However, because the record reflects that Lindell's wife does not have an interest in the IRA that would warrant altering the preliminary order of forfeiture, the Court does not further dwell on this subject.

was provided of the preliminary order of forfeiture, as required by Section 853, and no third party has stepped forward with an interest in the IRA, the government is entitled to clear title in the $27,000 of the IRA found forfeitable by the jury in this case. *See* 21 U.S.C. § 853(n)(7).

**2. Substitute Forfeitable Property**

The government argues that the remaining value of Lindell's IRA should be treated as substitute forfeitable property because, other than the $27,000 discussed above, all other directly forfeitable property has been either transferred to third parties or commingled with other property that cannot be divided without difficulty. Dkt. No. 407-1 at 7; Dkt. No. 428 at 9, 12-14, 18-23. Lindell responds by arguing that the government has failed to identify property subject to direct forfeiture, show that property was unavailable at the time of his conviction or that he made the property unavailable, or explain the value of the IRA or the judgment of forfeiture to which the value of any substitute property would be applied. Dkt. No. 427 at 4-17.

This Court agrees with the government that the remaining value (if any) of the IRA may be treated as substitute forfeitable property because the requirements of Section 853(p) have been met. As explained above, the government may seek substitute property under Section 853(p) when a defendant causes by any act or

omission property subject to forfeiture to be, among other things, transferred to another or commingled with other property which cannot be divided without difficulty. Here, the record reflects that has occurred.

First, the government points to a $3 million residence of Lindell that was transferred to a bankruptcy trustee after Lindell filed a voluntary bankruptcy proceeding. Dkt. No. 428 at 18-21. Lindell argues that this property should not be considered forfeitable because it was divested as a result of a settlement agreement in his bankruptcy proceeding. Dkt. No. 427 at 10-14. Lindell provides no authority, however, for this novel contention, and the Court finds it at odds with the clear language of Section 853(p). That provision applies to *any* act or omission of the defendant that results in forfeitable property being unavailable. Here, Lindell committed at least two acts: filing a voluntary bankruptcy proceeding and entering into a settlement agreement with the bankruptcy trustee. Because of those acts, Lindell's residence was transferred to a third party−the bankruptcy trustee. Therefore, Section 853(p)(1)(B) applies.[6]

[6]Lindell's assertion−that the record is "unclear whether the house was beyond the reach of forfeiture in May, 2015" (Dkt. No. 427 at 9)−simply ignores the undisputed fact that the settlement agreement with the bankruptcy trustee was entered into on October 31, 2011. *See* Dkt. No. 314-2.

Second, the government points to the bank accounts of Lindell's business, in which funds from investors were commingled with general funds and made difficult to trace due to an automatic "sweep" every day. Dkt. No. 407-1 at 3-7. Lindell does not raise any specific opposition with respect to his business' bank accounts, but argues, generally, that the government cannot rely on any of his former assets as unavailable property because the government supports its position by citing to trial testimony that "says nothing about the Defendant or his assets at the time of his conviction." Dkt. No. 427 at 9. Lindell, however, does not contest what any of the trial transcripts show. As the government recounts, the trial testimony shows investor funds were commingled with general business funds and those funds were swept from the business' checking account to a savings account and vice versa. 4/23/15 Tr. at 43:9-45:17, Dkt. No. 259. The same testimony reflects that the above-described process made accounting for the derivation of funds in the business accounts very difficult. *Id*. at 45:11-17. The mere fact that the trial testimony, as it must, involves a witness speaking about past events with respect to the business' bank accounts does not change the fact that the investor funds were commingled with other funds and made difficult to divide due to the acts of Lindell in having investor funds deposited in his business' bank accounts. Moreover, in contrast to the trial evidence, there is no evidence that the

commingled funds magically divided at some point after Lindell's fraud or by the time of his conviction.[7] Therefore, the investor funds that were deposited in Lindell's business' bank accounts are also unavailable for purposes of Section 853(p)(1)(E).

None of Lindell's other arguments for denying the motion hold water. Lindell argues that the government has not identified forfeitable property that is unavailable. Dkt. No. 427 at 5-8. However, apart from the property identified above, the government *does* identify the property it believes to be unavailable. *See* Dkt. No. 407-1 at 3-7; Dkt. No. 428 at 12-13. Lindell also argues that the government does not provide the current value remaining in the IRA, how much of the money judgment against Lindell and his co-defendant has been satisfied, or to which judgment substitute assets will be applied. In its reply, the government states that no amount has been satisfied on the outstanding money judgments. Dkt. No. 428 at 24 n.1; Dkt. No. 428-1 at ¶ 6. In addition, as the government explains, because the money judgments against Lindell are concurrent, it matters little to which the remaining funds in the IRA are applied. *See* Dkt. No. 428 at 24-25. Finally, the Court agrees with the government that, at this point, the current

---

[7] The Court, thus, need not decide whether the "time of conviction," as Lindell argues, is the only relevant point in time for purposes of whether forfeitable property is unavailable.

value of the IRA is not of meaningful import, given that the government only seeks a *preliminary* order of forfeiture. In other words, at this point, the government will not be recovering an amount in excess of the money judgments in this case, as Lindell appears to fear.[8]

**CONCLUSION**

For the foregoing reasons, the motion, Dkt. No. 407, is GRANTED. The Court will enter an amended preliminary order of forfeiture and partial order of forfeiture concurrently herewith.

IT IS SO ORDERED.

DATED: August 28, 2020 at Honolulu, Hawai‘i.

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

Derrick K. Watson
United States District Judge

*United States v. Lindell,* Case No. 13-cr-00512-DKW-1; **ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR AN AMENDED PRELIMINARY ORDER OF FORFEITURE AND A PARTIAL FINAL ORDER OF FORFEITURE**

[8]Lindell also appears to contend that fees paid to a law firm in his bankruptcy proceeding should be "credited" to the amount of the money judgments against him. Dkt. No. 427 at 14-15. Again, Lindell provides no legal support for this contention, and the Court rejects it.

10